**LOVELESS CONSTRUCTION CO., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9701–TA–00065.

Tax Court of Indiana.

June 15, 1998.

Curtis J. Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Loveless Construction Co. (Loveless) appeals a final determination of the State Board of Tax Commissioners (State Board) assessing an office building it owns as of March 1, 1994. The sole issue to be decided is whether the State Board erred in assigning a 5% obsolescence factor to the property.

## FACTS AND PROCEDURAL HISTORY

Loveless owns an office building in New Castle, Indiana. Loveless leases office space in that building to various tenants. In 1994, Loveless filed a Form 130 Petition for Review of Assessment with the Henry County Board of Review (BOR). The BOR declined to change the assessed value of the property. On October 3, 1994, Loveless filed a Form 131 Petition for Review of Assessment with the State Board alleging that an improper amount of obsolescence was awarded, that some of the land was classified incorrectly, and that the assessment violated the Indiana Constitution. On January 4, 1996, a State Board hearing officer, Mr. Norman Binford, conducted a hearing concerning Loveless' petition. On November 22, 1996, the State Board issued its final determination. In its final determination, the State Board rejected Loveless' constitutional claims, adjusted the land value, and refused to award additional obsolescence depreciation to the property. On January 6, 1997, Loveless filed an original tax appeal. On October 31, 1997, the parties tried this cause before the Court. At trial, the parties stipulated that the only issue for the Court's resolution was the obsolescence of the property. On March 12, 1998, the Court, having been briefed by the parties, took this cause under advisement and now issues its decision. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ Because the State Board is Indiana's property assessing expert, this Court affords the State Board a great deal of deference in its final determinations. Consequently, a State Board final determination will only be reversed where the taxpayer demonstrates that it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds the State Board's legal authority, or is arbitrary or capricious. *See Zakutansky v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1365, 1367 (Ind. Tax Ct.1998).

### Discussion and Analysis

■ The True Tax Value of a commercial improvement is determined by calculating the reproduction cost of the improvement (as determined by an application of the State Board regulations) and subtracting any physical and obsolescence depreciation. *Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 373 (Ind. Tax Ct.1997), *petition for review filed*, Jan. 21, 1998. Obsolescence is defined by the regulations as a functional and economic loss of value. IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.* r. 2.2–10–7(e) (1996)). Functional obsolescence is caused by factors internal to the property and is "evidenced by conditions within the property." *Id.* Economic obsolescence is caused by factors external to the property. *Id. See also Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1238 (Ind. Tax Ct.1998) (discussing obsolescence). The obsolescence of a given improvement[1] represents a loss of value. *See Clark*, 694 N.E.2d at 1238. In the commercial context, a loss of value usually represents a decrease in the improvement's income generating ability. *See id.* (citing *Simmons v. State Bd. of Tax Comm'rs*, 642 N.E.2d 559, 560–61 (Ind. Tax Ct.1994); *GTE N., Inc. v. State Bd. of Tax Comm'rs*, 634 N.E.2d 882, 887 (Ind. Tax Ct.1993)).

■ The regulations state that an "accurate determination of Obsolescence Depreciation will require the Assessor to recognize

---

1. Under the regulations, land does not experi- ence obsolescence.

the symptoms of obsolescence and exercise sound judgement in equating his observation of the property to the correct deduction in value from Reproduction Cost New." IND. ADMIN. CODE tit. 50, r. 2.1–5–1. An assessor's determination of obsolescence is a two-step inquiry. *See Clark,* 694 N.E.2d at 1238. "The assessor must identify the causes of obsolescence and then quantify the amount of obsolescence to be applied." *Id.* However, the regulations contain no specific guidance on how obsolescence is to be quantified. *See id.* at 1239–40.

■ Loveless bears the burden of demonstrating that the State Board erred in determining the subject property's obsolescence. First, Loveless argues that an examination of the testimony of the State Board hearing officer and the State Board's final determination shows that the 5% figure is unsupported by substantial evidence. Loveless' second challenge to the final determination is that the State Board erroneously disregarded the taxpayer's evidence concerning the obsolescence of the property. The State Board counters by arguing that Loveless failed to make a prima facie case demonstrating that additional obsolescence was justified. Therefore, Loveless cannot satisfy its burden of demonstrating that the State Board's final determination was erroneous.

■ In its final determination, the State Board found that "[n]o evidence was submitted to support the application of functional or economic obsolescence. It is determined that no additional obsolescence [beyond that awarded by the BOR] be applied." (Joint Ex. C at 11). This explains what the State Board thought of Loveless' evidence. However, it does nothing to explain why the State Board found that the subject property had 5% obsolescence, as opposed to any other figure. *Cf. id.* at 1240 n. 15. At trial, the State Board hearing officer could not point to any facts that would support the decision to quantify the obsolescence at 5%, other than the possibility that the BOR was "doing a little equalization." (Trial Tr. at 34).

Under this Court's previous decisions, this falls well short of the substantial evidence needed to support a State Board final determination. *See id.* at 1240–41. There is not a scintilla of evidence in the record to support the quantification of the property's obsolescence at 5%. Perhaps realizing this problem, the State Board advances a different argument. The State Board points out that it merely maintained the 5% figure determined by the BOR and argues that to "preserve the status quo," in the absence of the taxpayer offering probative evidence showing that the 5% figure as determined by the BOR was incorrect, was proper.

■ The flaw in the State Board's argument is that it focuses on the 5% figure itself, rather than how that figure was determined. *See Scheid v. State Bd. of Tax Comm'rs,* 560 N.E.2d 1283, 1285 (Ind. Tax Ct.1990) (Court concerned with "integrity of process by which the facts were found, rather than the facts themselves."). As this Court recently explained, "a taxpayer need not always challenge the accuracy of an assessment in order to challenge the basis of an assessment." *Clark,* 694 N.E.2d at 1234. This means that Loveless does not have to show that the 5% figure is inaccurate in order to prevail. Instead, Loveless must demonstrate that the 5% figure lacks evidentiary support. *See id.* at 1240 n. 16. Loveless has done so, notwithstanding the fact that the State Board maintained the BOR's figure.

■ Loveless' second challenge to the State Board's final determination is that the State Board erroneously disregarded Loveless' evidence of obsolescence. At the State Board hearing, Loveless attempted to support its claim of economic obsolescence by offering financial statements showing the income generated by the property for 1991 through 1993 and by offering evidence that, in order to keep the property fully occupied, Loveless had to change from net leases to gross leases.[2] The financial statements showed a decline of almost 10% in net profits

---

**2.** In a gross lease, the lessor pays expenses such as utilities, insurance, and taxes; in a net lease, the lessee pays those expenses. (Trial Tr. at 7–8).

from 1991 to 1993.[3]  Loveless also offered evidence comparing the True Tax Value of the property to the value of the property as determined by capitalizing the income generated by the property. *See* APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 467 (10th ed.1992). Additionally, Loveless offered newspaper articles purporting to show that there was a regional office space glut and a general decrease in the value of real estate. At the State Board hearing, Loveless argued that this evidence demonstrated that the 5% obsolescence factor awarded by the BOR was far too low.

■ As this Court recently pointed out, "[t]he State Board may not simply refuse to consider the taxpayer's evidence." *Clark*, 694 N.E.2d at 1235. Rather, the State Board is required to deal with the taxpayer's evidence in a meaningful manner. The prima facie case formulation is tailored to allow the Court to determine what probative evidence the taxpayer presented to the State Board and whether the State Board complied with the requirement of dealing with that evidence meaningfully. The establishment of a prima facie case, however, is not a sine qua non to a taxpayer carrying its burden of demonstrating that a State Board final determination is improper.[4]  *Id.* at 1240 n. 16. Therefore, a complaint that the taxpayer has not established a prima facie case, even if true, does not necessarily spell doom for the taxpayer's appeal.

■ "In order to establish a prima facie case, a taxpayer must introduce evidence sufficient to establish a given fact and which if not contradicted will remain sufficient." *Clark*, 694 N.E.2d at 1233 (quoting *GTE N.*, 634 N.E.2d at 887) (internal quotation marks omitted). Once the taxpayer carries this burden, the burden then shifts to the State Board to rebut the taxpayer's evidence and justify its decision. *See Western Select*, 639 N.E.2d at 1072. In order to carry its burden, the State Board must do more than merely assert that it assessed the property correctly. *See Canal Square v. State Bd. of Tax Comm'rs*, 694 N.E.2d 801, 808 (Ind. Tax Ct. 1998) (mere recitation of expertise insufficient to rebut prima facie case). Instead, the State Board must offer an authoritative explanation of its decision to discount the taxpayer's prima facie showing.[5]  *See id.* at 804.

The State Board regulation concerning obsolescence provides that one cause of economic obsolescence is a decrease in the "[m]arket acceptability of the product or devices for which the property was constructed or is currently used." IND. ADMIN. CODE tit. 50, r. 2.1–5–1. The subject property is used as an office building. The "product" is the leased office space. *Cf. Lake County Trust Co. No. 1163 v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1253, 1257 (Ind. Tax Ct.1998). The change of the leases from net leases to gross leases made the leases less costly to the tenants. This means that the market considered the leases less valuable than previously. Consequently, the market acceptability of the leases decreased. Loveless corroborated the decrease in the market acceptability of the leases by introducing financial statements documenting a decrease in net income from 1991 to 1993.[6]

3. The financial statements (which, incidentally, were accepted by the State Board hearing officer as factual (Trial Tr. at 23)) showed that in 1991, the property generated a net income of $33,330. In 1992, the property generated a net income of $23,915. In 1993, the property generated a net income of $30,065.

4. In *Clark*, 694 N.E.2d at 1241, this Court stated that it will refuse to consider taxpayer complaints concerning obsolescence unless the taxpayer has presented probative evidence concerning the alleged causes of obsolescence and the quantification of that alleged obsolescence at the administrative level. This aspect of *Clark* only applies to cases where the State Board conducts a hearing (whether on remand or otherwise) concerning an assessment after April 24, 1998

(the date of the *Clark* decision). Therefore, in those cases, the establishment of a prima facie case of obsolescence *is* a sine qua non to the taxpayer successfully challenging a State Board final determination of the obsolescence of a given improvement.

5. Ideally, the State Board would articulate its reasoning in its final determination. That would provide the taxpayer and this Court with detailed written findings that explained how the State Board arrived at its decision.

6. Previous decisions of this Court have taken a dim view of financial statements offered in support of a taxpayer's claim of obsolescence. *See Clark*, 694 N.E.2d at 1239 n. 13; *Simmons*, 642

◼ This constitutes a prima facie case of obsolescence.[7] The only evidence offered in rebuttal of this prima facie case was the fact that the subject property was fully occupied.[8] This, however, does not rebut Loveless' prima facie case of obsolescence.[9] "A high occupancy rate is not necessarily determinative of whether obsolescence exists because a taxpayer may have had to reduce the rent to maintain the high occupancy rate." *Clark*, 694 N.E.2d at 1239. Loveless presented evidence that this was the case. It was incumbent upon the State Board to rebut this showing. However, the State Board did not. Therefore, the State Board's final determination was improper.

Loveless has demonstrated that the State Board's final determination is deficient in two respects. First, the quantification of obsolescence at 5% is not supported by substantial evidence, and second, the State Board failed to rebut Loveless' prima facie case of obsolescence. Therefore, the final determination of the State Board is REVERSED and REMANDED.

## REMAND INSTRUCTIONS

◼ On remand, Loveless will be required to offer probative evidence quantifying the obsolescence of its property. *See id.* at 1241. As this Court has held previously, a permissible means of quantifying the obsolescence of a particular improvement is to use generally accepted appraisal methods and

the associated economic analysis. *See Canal Square*, 694 N.E.2d at 805–06. At the State Board hearing, Loveless attempted to quantify the obsolescence of its property by comparing the True Tax Value of the property (as calculated by the BOR) to the value of the property as determined by capitalizing the income generated by the property during one year. *See* THE APPRAISAL OF REAL ESTATE, *supra*, at 467, 477 (discussing direct capitalization method). By doing this, Loveless attempted to show that there was a marked disparity between the True Tax Value of the property (as calculated by the BOR) and the value of the property as calculated by capitalizing the income generated by the property. At the State Board hearing, Loveless argued that this disparity demonstrated 25% obsolescence. (Joint Ex. A). At trial, Loveless argued that the comparison demonstrated that the 5% obsolescence figure was "wholly inadequate." (Trial Tr. at 11).

◼ Loveless' attempt to quantify the obsolescence of the property in this manner is flawed. The obsolescence of a particular improvement is tied to the loss of the improvement's income generating ability. The income generated by an improvement is measured in real dollars, not True Tax Value dollars. Therefore, a comparison of an improvement's True Tax Value to its value as calculated by capitalizing the income of the property is essentially meaningless.

N.E.2d at 560–61 n. 2. In those cases, the problem was the taxpayer's inability to relate the financial statements to its theory of why the subject property experienced obsolescence. The instant case does not present this problem.

7. In determining whether Loveless established a prima facie case, the Court did not consider the comparison of the True Tax Value of the property with the value of the property as determined by capitalizing the income generated by the property. Nor did the Court consider the newspaper articles purporting to show a regional office space glut. The comparison of the True Tax Value of the property with the capitalized income is not a proper way of demonstrating obsolescence for reasons that will be explained later in the opinion. The newspaper articles were not probative of the subject property's obsolescence. Although they may have shown a regional office space glut, they did not show an office space glut in the New Castle area.

8. The Court notes that the State Board failed to mention the fact that the subject property was fully occupied in its final determination. *See Clark*, 694 N.E.2d at 1239 n. 14; *Canal Square*, 694 N.E.2d at 809–10 (State Board's reasoning for its decisions must be contained in its written findings). If the State Board presents reasons at trial for a decision that are not mentioned in the written findings, the Court has no way of determining whether the reasons constitute a post hoc rationalization or a legitimate part of the decision. However, where, as here, the taxpayer does not argue the point, the Court will simply treat the reasoning as if it were part of the final determination.

9. The Court notes that Loveless has only presented probative evidence of the causes of obsolescence. Loveless has not presented probative evidence quantifying the alleged obsolescence of the subject improvement.

On remand, the entire issue of obsolescence is open for reconsideration. To that end, Loveless is entitled to offer any evidence probative of obsolescence regardless of whether that evidence was presented at the original State Board hearing. In addition, the State Board may conduct any additional lawful investigation it deems necessary and may use any evidence uncovered in that investigation to determine the obsolescence of the property. If the State Board chooses to do so, Loveless will have to be given the opportunity to respond to any new evidence discovered by the State Board. *See Castello v. State Bd. of Tax Comm'rs*, 638 N.E.2d 1362, 1365 (Ind. Tax Ct.1994).

## CONCLUSION

For the foregoing reasons, this cause is REMANDED to the State Board for further proceedings consistent with this opinion.